UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RENEE M. BAILEY,         )<br>                          )<br>     Plaintiff,          )<br>                          )<br>     v.                   )<br>                          )<br>CAROLYN COLVIN,           )<br>Acting Commissioner of Social Security, )<br>                          )<br>     Defendant.           ) | CAUSE NO. 3:14-CV-01709-CAN |

**OPINION AND ORDER**

On July 2, 2014, Plaintiff Renee M. Bailey ("Bailey") filed a complaint in this Court seeking reversal of the Social Security Commissioner's final decision to deny her application for Supplemental Security Income ("SSI"). Alternatively, Bailey seeks a remand for further consideration of her application. On November 5, 2014, Bailey filed her Memorandum of Law in Support of a Social Security Appeal. On February 5, 2015, Defendant, Commissioner of Social Security ("Commissioner"), filed a response asking the Court to affirm the decision denying benefits. This Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**I.     PROCEDURE**

On February 1, 2013, Bailey filed an application for SSI with the Social Security Administration ("SSA") pursuant to 42 U.S.C. §§ 416(i), 423 alleging disability beginning November 1, 2011. The SSA denied Bailey's application initially on June 21, 2013, and then again on August 27, 2013, after reconsideration was granted. On September 18, 2013, Bailey filed a timely request for an administrative hearing. On February 12, 2014, the hearing was held

before an administrative law judge ("ALJ") where Bailey and an impartial expert appeared and testified. On March 11, 2014, the ALJ issued his decision finding that Bailey was not disabled at Step Five of the evaluation process and denied her applications for benefits.[1] On April 1, 2014, Bailey filed a request for review of the ALJ's decision with the Appeals Council. On May 2, 2014, the Appeals Council denied Bailey's request for review, making the ALJ's decision the final decision of the Commissioner. Bailey then sought judicial review of the Commissioner's final decision pursuant to sentence four of 42 U.S.C. § 405(g) by filing her complaint in this Court on July 2, 2014.

## II. RELEVANT BACKGROUND

Bailey was born on November 3, 1977, making her 35-years old on the alleged disability onset date and has earned a GED. At the time of the February hearing, Bailey was working approximately 20 hours per week as a cashier in a tobacco store and was attending college classes for business and technology. Prior to the alleged onset date, Bailey has reportedly worked as a brander, cashier, inventory specialist, night auditor, and warehouse manager.

At her hearing before the ALJ, Bailey testified that she suffers from pain in her back and hips that extends to her legs, numbness in her arms and legs, muscle spasms that cause her to lose her balance, as well as asthma. Bailey testified that she cannot stock the merchandise at her job because she cannot even pick up a two-liter bottle. Bailey also testified that she wears an adjustable belt to help her hips and uses a cane to help her balance. In addition, Bailey testified that she has bipolar disorder and anger issues that make it difficult to get along with people, post-traumatic stress disorder with related anxiety, and also obsessive compulsive disorder.

---

[1] Social Security regulations 20 C.F.R. § 416.945 provide a five-part test to determine whether the claimant is entitled to disability benefits.

Bailey also provided the ALJ with medical evidence that documented her visits to various doctors from July 9, 2012, up to the date of the hearing on February 12, 2014. The medical record and opinions show that Bailey has been treated for degenerative disc disease, asthma, substance abuse, and a multitude of mental disorders, which have changed throughout the relevant period, classified under the DSM-V as mood, anxiety-related, and personality disorders. Bailey has also recently been diagnosed as obese.

Bailey was treated with a varying medication regimen throughout the relevant period. In March 2013, as a result of alcohol and drug use, Bailey experienced a suicidal episode and was admitted to Indiana University Hospital in La Porte. A few days later, Bailey was released by Dr. Zwerneman with treatment instructions. Thereafter, Bailey began psychotherapeutic meetings with a counselor from March 21, 2013, to June 10, 2013. During this time, Bailey was seen by Dr. Onamusi, M.D., on March 27, 2013 for a consultative medical examination, and seen by Dr. Streich, Ph.D., on March 28, 2013 for a consultative psychological examination. Bailey's mental health record was also assessed by non-examining State agency psychological consultants.

After the hearing, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed by the SSA's regulations. At Step One, the ALJ found that Bailey has not engaged in substantial gainful activity since February 1, 2013, the application date. At Step Two, the ALJ found that Bailey has the following severe impairments: degenerative disc disease; mood, anxiety-related, and personality disorders; and poly-substance use disorder. At Step Three, the ALJ found that Bailey does not have an impairment or combination of impairments that meets or medically equals the severity of a listing. The ALJ then determined that Bailey retained the residual functional capacity ("RFC")

3

to perform light work with the following limitations: limited to simple, routine, repetitive tasks; cannot climb ladders, ropes and scaffolds; no interaction with the public; no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling, and interacting with supervisors and co-workers; and avoidance of concentrated exposure to breathing irritants such as fumes, odors, dusts, and gases.

At Step Four, the ALJ found that Bailey is unable to perform any past relevant work. At Step Five, the ALJ found that considering Bailey's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. Based on these findings, the ALJ determined that Bailey had not been disabled from February 1, 2013. After the Appeals Council denied Bailey's request for review, the ALJ's decision became the final decision of the Commissioner for purposes of judicial review.

### A. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is more than a mere scintilla but may be less than the weight of the evidence. *Sheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 468 F.3d 513, 516 (7th Cir. 2001).

A reviewing court is not to substitute its own opinion for that of the ALJ or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Minimally, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not specifically address every piece of evidence in the record, but must present a "logical bridge" from the evidence to his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

B.   **Issues for Review**

This Court must ascertain, not whether Bailey is disabled, but rather, whether the ALJ's RFC determination for Bailey is supported by substantial evidence. Bailey contends that the ALJ's opinion does not support her RFC determination because (1) the ALJ improperly weighed the assessment of consultative psychologist Dr. Streich, (2) the ALJ made an erroneous credibility determination as to Bailey's mental impairments, and (3) the ALJ's Step Five analysis was improper because he relied upon vocational testimony elicited in response to an incomplete hypothetical question. Each of these arguments is addressed in turn.

An individual's RFC demonstrates her ability to do physical and mental work activities on a sustained basis despite functional limitations caused by any medically determinable impairment(s) and their symptoms, including pain. 20 C.F.R. § 416.945; SSR 96-8p 1996. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 416.945. The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness

reports, and any other relevant evidence. SSR 96-7p 1996. "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. However, it is the claimant's responsibility to provide medical evidence showing how her impairments affect her functioning. 20 C.F.R. § 416.912(c). Therefore, when the record does not support specific physical or mental limitations or restrictions on a claimant's work related activity, the ALJ must find that the claimant has no related functional limitations. *See* SSR 96-8p.

For the reasons discussed below this Court finds that the ALJ properly weighed Dr. Streich's consultative psychological assessment and the credibility determination was not patently wrong. Therefore, the ALJ's RFC determination is supported by substantial evidence. As such, the ALJ's Step Five analysis is also supported by substantial evidence.

    1.    <u>Dr. Streich's Consultative Psychological Assessment</u>

Bailey contends that the ALJ made an erroneous RFC determination by according little weight to the consultative psychological assessment of Dr. Streich. Bailey bolsters her contention by arguing Dr. Streich's opinion should be entitled to greater deference because the only other opinions in the record regarding Bailey's mental limitations were assessments from non-examining State Agency psychological consultants, which also were accorded little weight. As a result, Bailey asserts that the ALJ played doctor by effectively discounting Dr. Streich's assessment.

In order to determine whether the ALJ properly weighed Dr. Streich's conclusions, the Court must first identify what type of "medical source" opinion that Dr. Streich has offered. *See Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009). A nontreating source is a physician,

6

psychologist, or other acceptable medical source who has examined the claimant but does not have, or did not have, an ongoing treatment relationship with them." *Id*. *see* 20 § C.F.R. 416.902.  Since Dr. Streich conducted only a one-time psychological examination of Bailey, which was purely consultative, and nothing in the record suggests an ongoing treatment relationship with her, Dr. Streich fits within the regulatory definition of a nontreating source.

The ALJ is not required to assign a nontreating source opinion controlling weight and is permitted to evaluate the opinion's weight in light of other regulatory factors.  *See Simila*, 573 F.3d at 514; s*ee also* 20 C.F.R. § 416.927(c)(1)-(6).  These other factors include the claimant's examining and treatment relationship with the source of the opinion; the physician's specialty; the support provided for the medical opinion; its consistency with the record as a whole; and any other factors that tend to support or contradict the opinion.  *See* 20 C.F.R. § 416.927(c)(1)-(6); *see Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010). ALJs are not bound by findings made by State agency or other program physicians and psychologists, but may not ignore these opinions and must explain the weight given to the opinions in their decisions.  SSR 96-6p.  The opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record.  *Id*.  If the ALJ discounts the physician's opinion after considering these factors, we must allow that decision to stand so long as the ALJ " 'minimally articulate[d]' " his reasons—a very deferential standard that we have, in fact, deemed "lax." *Berger v. Astrue,* 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart,* 384 F.3d 363, 372 (7th Cir. 2004)).

Here, the ALJ did not ignore Dr. Streich's March 28, 2013, assessment.  Rather, the ALJ expressly acknowledged Dr. Streich's assessment in the RFC, which described Bailey on that date as having "moderately-severe concentration disruption as well as an angry and irritable

7

affect with a terse and dismissive manner towards the consultative examiner." Doc. No. 12 at 25. Nevertheless, the ALJ accorded it little weight and sufficiently explained his reasons for doing so. Specifically, the ALJ explained his consideration of Bailey's examining and treatment relationship with Dr. Streich when he noted that Dr. Streich conducted only a one-time assessment that was purely consultative. Next, the ALJ considered Dr. Streich's specialization by noting that the consultative examination was specifically psychological and that Dr. Streich possessed a Ph.D.

More notably, the ALJ also explained how Dr. Streich's March 28, 2013, assessment lacked consistency with the record as a whole. First, the ALJ noted how remarkably inconsistent Dr. Streich's assessment was with Bailey's medical consultative examination that took place just one day before on March 27, 2103. In that exam, the doctor noted that she had "no difficulty sustaining conversation" and a "satisfactory" attention span. *Id*. The ALJ further found inconsistencies between Dr. Streich's assessment and the medical record by pointing to notes from Bailey's psychotherapeutic treatment appointments, which began March 21, 2013, one week prior to Dr. Streich's assessment, and continued until June 10, 2013. These psychotherapeutic notes indicated Bailey "develop[ed] good rapport" and "opened up and related more." *Id*. In addition, the ALJ noted that these positive psychotherapeutic notes were consistent with other medical records during that time noting that Bailey exhibited "appropriate behavior with a normal affect despite her continued use of ethanol for purposes of intoxication." *Id*.

Finally, the ALJ considered additional factors. First, the ALJ explained that Dr. Streich's assessment failed to take into account the extent to which the claimant's failure to comply with treatment directives has exacerbated her symptomology. Second, the ALJ relied on

inconsistencies between Dr. Streich's assessment and the evidence of Bailey's daily activities. The extent to which the ALJ relied on Bailey's testimony and other evidence in the record of her daily activities touches upon the ALJ's credibility determination of Bailey herself, which the Court addresses below. In any event, the ALJ's consideration of these additional factors fit within the authorization given by regulation to consider any other factors that tend to support or contradict the opinion.

Bailey contends further that the ALJ, by discounting the opinions of Dr. Streich, the only examining psychologist in this case, and of the non-examining State agency reviewers, the ALJ has "played doctor" and impermissibly constructed his own RFC without supporting medical evidence. An ALJ must not succumb to the temptation to play doctor and make their own independent medical findings. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). However, in cases of this nature, this view of the ALJ's role in evaluating psychological evidence is too narrow. *See Simila*, 573 F.3d at 515. Although another psychologist's opinion would augment the ALJ's analysis, neither the regulations nor prior decisions require the ALJ to rely on such specific evidence to rebut a nontreating physician. *Id*. An ALJ is not required or indeed permitted to accept medical evidence if it is refuted by other evidence—which need not itself be medical in nature. *Id.*

Here, the ALJ did precisely what the ALJ did in *Simila*. In *Simila*, the ALJ properly discounted the nontreating source's opinion, the only psychological opinion in that case, because it was inconsistent with other evidence in the record, particularly with notes from other examining doctors which conflicted with the nontreating source's opinion. *Id*. Here, just as the ALJ in *Simila,* the ALJ discounted Dr. Streich's opinion because it was inconsistent with notes from other examining doctors that conflicted with Dr. Streich's opinion, specifically Dr.

9

Onamusi's March 27, 2013, consultative medical exam notes, the notes from the March 21, 2013-June 10, 2013, psychotherapeutic reports, and other evidence in the medical record over that time which indicated Bailey exhibited appropriate behavior and normal affect. Moreover, the ALJ also relied on other evidence in the record including Bailey's daily activities, which although not medical in nature, are nonetheless evidence that an ALJ is permitted to use to refute a nontreating source opinion.

In sum, Bailey has asked this Court to reverse the ALJ's decision based on isolated selections of favorable evidence in an attempt to show the inconsistency at issue is of some lesser degree. But this Court will not substitute its own opinion for that of the ALJ or re-weigh the evidence so long as the ALJ articulates a logical bridge from the evidence to his conclusions. The ALJ here has done that. The ALJ's decision reflects consideration of all the factors prescribed in SSR 96-6p for this particular type of nontreating source opinion. In addition, even though Dr. Streich's consultative opinion was the only psychological assessment from an examining source, the ALJ properly supported his decision to discount Dr. Streich's opinion with substantial evidence showing it was inconsistent with and refuted by other evidence in the medical record. Thus, the Court finds no error with the weight given to Dr. Streich's assessment by the ALJ.

2. <u>Credibility Determination of Bailey's Mental Impairments</u>

Bailey contends that the ALJ's credibility determination related to her alleged mental health symptoms is not supported by substantial evidence because it is based on a misstatement of facts or an improper review of the record.

In assessing a claimant's subjective symptoms, the ALJ must follow a two-step process. SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment

that can be shown by acceptable medical evidence and can be reasonably expected to produce the claimant's pain or other symptoms. *Id*. Second, after showing an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of the impairment to determine the extent to which the symptoms limit the claimant's ability to work. *Id*. Whenever a claimant's statements about the symptoms and limitations of his impairment are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. *Id*. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary or the Secretary's designate, the ALJ. *Herr v. Sullivan*, 912, F.2d 178, 181 (7th Cir. 1990).

An ALJ's decision regarding a claimant's credibility must contain specific reasons for the finding on credibility, be supported by evidence in the record, and be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight the ALJ gave to the claimant's statements and the reasons for that weight. SSR 96-7p. The ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of disability. *Rice v. Barnhart,* 384 F.3d 363, 371 (7th Cir. 2004).

Although a claimant for social security disability benefits can establish the severity of his symptoms by his own testimony, his subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record. *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). An ALJ is free to discount an applicant's testimony on the basis of other evidence in the record. *Johnson v. Barnhart,* 449 F.3d 804, 804 (7th Cir. 2006). Because an ALJ is in a special position to hear, see, and assess witnesses, her credibility determinations are given

special deference and will only be overturned if they are patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-311 (7th Cir. 2012). An ALJ's credibility determination will only be considered patently wrong when it lacks any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

Bailey's alleged mental deficiencies include symptoms consistent with her alleged mood, anxiety-related, and personality disorders, such as belligerence; oppositional attitude; poor memory; and an inability to calculate or concentrate. Bailey asserts that the ALJ's credibility determination was improper because it was based on misstatements of fact, and points to the following selection from the ALJ's decision as an example: "… the only post-alleged onset date objective medical evidence from 2011, in the aftermath of her 2011 motor vehicle accident gives no indication of any deficiencies in mental functioning or current treatment." But this Court knows well the importance of context.

Indeed, if this isolated selection was the extent of the ALJ's explanation regarding Bailey's mental impairments from her alleged onset date to the date of decision, then this argument would have sway. That is because standing alone, this selection is devoid of any evidence in support. But in the ALJ's decision, this statement was not without significant explanation. The ALJ followed this statement with extensive discussion of Bailey's mental impairments in the RFC, and did so in chronological form. The ALJ created a reader friendly timeline of Bailey's mental health treatment as it appears in the medical record from July 2011 through early 2014 and explained at each relevant point thereon the extent to which Bailey's allegations were not consistent with the objective medical evidence.

For example, from July 2011 through 2012, the ALJ described Bailey's mental health treatment as minimal because she only received a medication regimen, which she was

intermittently compliant with, did not need redirection or refocusing of attention, had an ability to interact socially, and persisted in a bevy of daily activities. The ALJ explained that those findings "belie the veracity of any assertion that Bailey was precluded from performing work within the above noted [RFC] during that period." Doc. No. 12 at 24. From January 2013 to early March 2013, the ALJ noted that Bailey reported increased symptoms of stress and anxiety and exhibited a depressed affect, however had no hallucinations, no loss of memory, behaved appropriately for [her] age, and demonstrated a "normal attention span and concentration." *Id.* Then, also in early March, Bailey had a suicidal episode that the ALJ expressly acknowledged in the RFC. However, the ALJ noted that at the time of this decompensatory event, Bailey was noncompliant with treatment, and under the influence of, among other things, ethanol and cocaine. Bailey contends that the ALJ's misstated the facts when he reported that she was noncompliant with treatment. However, in support of the ALJ's finding, the ALJ cited Exhibit 10F, which contains a directive from Dr. Zwereman that Bailey abstain from alcohol use, and the record contains multiple sources of evidence that tend to support the ALJ's finding. As a result, the ALJ's finding in this regard cannot be labeled a misstatement of fact.

Moreover, the ALJ also pointed out that once treatment was recommenced, Bailey improved, with notations that her concentration was good, her memory intact, and able to focus on upcoming events. Throughout this period, Bailey was again only placed on a medication regimen. As noted above, Bailey then commenced psychotherapeutic treatment appointments from March 21, 2013-June 10, 2013, where she, among other things, "develop[ed] good rapport" during treatment and "opened up and related more." Doc. No. 12 at 25. Further, as noted above, Bailey saw a consultative medical examiner on March 27, 2013, and was noted to have "no

difficulty sustaining conversation" and a "satisfactory" attention span. *Id*. Bailey failed to address these facts, which were referenced by the ALJ, in crafting her credibility argument.

The ALJ also explained that the medical evidence covering the period from September 2013 through early 2014, showed Bailey was treated by Daniel Trezenberg, M.D., with a medication regimen for her diagnosed mental impairments. The ALJ also explained that while the record showed Bailey was frustrated, anxious, irritable, and displayed a shallow affect at this time, she refused to accept Dr. Trezenberg's referral for counseling and a psychiatric consultation. Further, the ALJ stated that despite Bailey's failure to follow Dr. Trezenberg's recommended treatment path, she was still able to balance working up to twenty hours per week, take classes three days per week, and maintain a 3.7 grade point average. In addition, the ALJ noted Bailey's ability to balance this schedule along with the logistics necessary to meet its demands, included taking three different buses to get to school. The ALJ concluded that these findings "belie[d] the veracity of her assertions that her mental impairments, including her recent allegation of poor memory, impact her beyond the capacity for worked comprised of simple, routine, repetitive tasks requiring no interaction with the public and no more than occasional interaction with co-workers and supervisors." Doc. No. 12 at 25-26. Here, the ALJ's decision contains specific reasons for his credibility determination and is supported by objective medical and other evidence in the record. Thus, this Court cannot say that the ALJ's credibility determination was patently wrong.

3. Step Five Analysis

As a final note, Bailey asserts that if the RFC was in error, then the instruction to the vocational expert at the hearing must therefore also be in error. The Court need not address this

Step Five argument, because the ALJ's RFC determination is not changed as the result of this opinion and order.

## III.   CONCLUSION

Because the ALJ properly weighed Dr. Streich's consultative assessment and the ALJ's credibility determination of Bailey's mental health impairments was not patently wrong**,** this Court concludes that the ALJ's RFC determination is supported with substantial evidence. Thus, this Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 7th Day of July, 2015.

<u>s/Christopher A. Nuechterlein</u>
Christopher A. Nuechterlein
United States Magistrate Judge